CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 0 7 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| CAROLYN S. GOOD, | ) | Case No. 5:07cv00059 |
|  | ) |  |
| Plaintiff, | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) | By: Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U.S. Magistrate Judge |
|  | ) |  |
| *Defendant* | ) |  |
|  | ) |  |

The plaintiff, Carolyn S. Good, filed this action pursuant to 42 U.S.C. § 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for a period of disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. 405(g). Claiming entitlement to a period of "disability" within the meaning of the Act beginning January 1, 1998, the plaintiff alleges in her Complaint that the administrative law judge ("ALJ") "committed prejudicial error in the manner in which he conducted the [administrative] hearing" and that his decision denying her claim "was not based on substantial evidence."

The Commissioner's Answer was filed on October 26, 2007 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered October 29, 2007, this case

is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Paragraph 1 of this court's Standing Order No. 2005-2 obligates the plaintiff in cases seeking review of decisions by the Commissioner of Social Security to file a brief addressing the reason why the final decision of the Commissioner is not supported by substantial evidence or why it should be otherwise reversed or remanded. Pursuant to the terms of this Standing Order, the plaintiff's brief must be filed within thirty (30) days of receipt of a copy of the administrative record.[1]

As a courtesy, after expiration of this prescribed time, the agency's Office of Regional Chief Counsel informed plaintiff's counsel of record, by letter dated December 13, 2007, that his client's brief was past due. In addition, this reminder letter referenced plaintiff's counsel to the applicable Standing Order and alerted him to the possibility that this briefing failure could result in dismissal of the case by the court. In his written response dated December 20, 2007, plaintiff's counsel expressed the view that this case was assigned to Judge Conrad and that no briefing was required pursuant to the terms of the exclusion contained in the last paragraph of Standing Order 2005-2. To correct this error by plaintiff's counsel, on January 11, 2008 the Office of Regional Chief Counsel sent a follow-up response and included a printed copy of the court's PACER record to document that the case in fact was not assigned to Judge Conrad. Therein, plaintiff's counsel was again reminded

---

[1] In this case the plaintiff's brief was due on November 25, 2007, thirty days after a copy of the administrative record was filed.

that his client's brief was past due and that this failure to file could result in the case's dismissal. Copies of all three letters are attached hereto and incorporated herein by reference.

Without addressing whether this case should be dismissed on the basis of this briefing failure, at a minimum it must be deemed a waiver of any right by, or on behalf of, the plaintiff to address, both in writing and orally, the reasons set forth in her Complaint why she believes the Commissioner's final decision is not supported by substantial evidence or why it should be otherwise reversed and remanded. The Answer of the Commissioner seeks affirmance of the administrative decision and is, therefore, deemed to be a motion for summary judgment. Based on a thorough review of the administrative record, the following report and recommended disposition are submitted.

### I. Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement to a period of disability insurance benefits pursuant to the Act. "Under the...Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel,* 270 F. $3^d$ 171, 176 (4th Cir.2001) (quoting *Craig v. Chater,* 76 F. $3^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo.* "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. "*Mastro,* 270 F.$3^d$ at 176

(quoting *Laws v. Celebrezze,* 368 F. 2$^d$ 640, 642.) "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (quoting *Craig v. Chater,* 76 F. 3$^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton,* 211 F. 3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.     Administrative History

The record shows that the plaintiff protectively filed her application for a period of disability insurance benefits on or about September 29, 2004 claiming disability beginning January 1, 1998 due to "MS, pancreatic mass, [and] joint pain." (R.48-49,81-96.) In subsequent reports pertaining to her medical and functional problems, the plaintiff reported diffuse other medical problems, including *inter alia* urinary retention problems, blood in her urine, depression, heartburn, vision problems, pain in both hands and "very severe" pain in both legs. (R.54-77.) After her application was denied, both initially and on reconsideration, an administrative hearing on her application was held on November 21, 2006 before an ALJ. (R.21-26,29-47,287-315.) At the hearing, the plaintiff was present; she testified, and she was represented by counsel. (R.17,27-28,287-315.)

Utilizing the agency's standard five-step decisional inquiry, [2] the plaintiff's claim was

---

[2] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel,* 270 F.3$^d$ 171, 177 (4th Cir. 2001). It begins with the question of whether the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry requires a determination of whether, based

4

subsequently denied by written administrative decision on January 8, 2007. (R.11-18.) Based on the plaintiff's earnings record and testimony, at the first decisional step the ALJ found that the plaintiff met the "insured status" requirements of the Act through June 30, 2002, and that she had not engaged in substantial gainful activity since her alleged onset date of January 1, 1998. (R.13-14,51-53.) In connection with the ALJ's outline of the medical evidence, at step-two he concluded that the plaintiff's longstanding pain syndrome and depression required medication and treatment on a regular basis and caused her "moderate difficulties in maintaining concentration, persistence [and] pace." (R.14.)

Based on his review of the medical evidence, at step-three of the decisional process, the ALJ determined that neither of these conditions met nor medically equaled any impairment listed in Appendix 1, Subpart P, Regulations No. 4. *See* 20 C.F.R. § 404.1520(d). (R.14.) After further considering the entire record and "affording [the plaintiff] the maximum benefit of the doubt with respect to her subjective complaints" to the extent of their consistency with the objective medical evidence, through her last insured date the ALJ concluded that the plaintiff retained the functional capacity to perform a limited range of sedentary work [3] activity. (R.14-17.)

---

upon the medical evidence, the individual has a severe impairment. 20 C.F.R § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d). If so, the person is disabled; if not, step-four is a consideration of whether the person's impairment prevents him or her from returning to any past relevant work. 20 C.F.R § 404.1520(e); 20 C.F.R § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F. R. § 404.1520(f).

[3] Sedentary work involves lifting items weighing up to 10 pounds and occasionally carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing may be necessary to carry-out the job duties. *See* 20 C.F.R. § 404.1567(a).
5

At step-four, the ALJ found that the plaintiff's exertional and nonexertional limitations prevented her from performing her past relevant work either as a nursing assistant or a cashier. (R.16.) He then determined that the plaintiff's limitations made the agency's Medical-Vocational Guidelines ("Grids") inapplicable, and "[t]o determine the extent to which [her] limitations eroded the unskilled, sedentary occupational base," he considered the relevant vocational testimony. (R.17.) At this last determinative step, the ALJ then concluded that the plaintiff could perform the requirements of a limited range of work activity and cited work as an order clerk (food and beverage industry) and surveillance system monitor to be representative examples. (R.11,17.)

After the ALJ's issuance of his adverse decision, the plaintiff made a timely request for Appeals Council review. (R.283-286.) Finding "no reason" to grant a review, the Appeals Council denied the request (R.4-7), and the decision of the ALJ dated January 8, 2007 stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Summary of the Facts

The plaintiff was born in 1956 and was nearly forty-two years of age at the time of her alleged disability onset and forty-six years [4] of age at the time her insured status expired. (R.16,48,52-53.) She completed the tenth grade in school, and her past relevant employment included work as a certified nursing assistant and as a part-time cashier in a variety store.

---

[4] At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

(R.16,68,76,84-90,92-93,95,98,293-297.)

Prior to the expiration of her Title II "insured status," the plaintiff's medical records and her testimony show that she was treated by her primary care physician on an ongoing basis for a number of both transient and reoccurring medical problems, the most relevant of which included migraine headaches, diffuse complaints of joint and muscle pain and depression. (R.187-208,298-302.) Her treatment was conservative and required no hospitalizations. (*Id.*)

Her more recent medical records similarly show essentially the same continuing care by her primary care physicians for a similar range of transient and chronic health-related complaints. (R.101-106,119,159-186,217-251.258-282). Additionally, they document her referral to a number of other health care professionals for evaluation or periodic treatment. (R.99-158.)

IV. **Discussion**

A.

Although the plaintiff did not clearly plead a procedural due process [5] claim, it is certainly implied from her allegation of prejudice "in the manner" in which the hearing was conducted. Accordingly, this allegation requires a *de novo* review of the hearing transcript. *See Richardson v.*

---

[5] "Substantive due process is a far narrower concept than procedural due process," and it constitutes "an absolute check on certain governmental actions" irrespective of the procedural fairness utilized to implement them. *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995). To state a substantive due process claim, a plaintiff must demonstrate: "(1) that [she] had property or a property interest; (2) that the state deprived [her] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Southern Blasting Services, Inc. v. Wilkes County, NC*, 288 F.3d 584, 594 (4th Cir. 2002) (*citing Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995).

7

*Perales*, 402 U.S. 389, 401-401 (1971) (procedural due process under the Fifth Amendment requires full and fair hearings for disability benefits).

A careful and thorough review of the hearing transcript amply documents the fact that the ALJ conducted standard a non-adversarial hearing. *See Perales*, 402 U.S. at 403 ("We bear in mind that the agency operates essentially, and is intended so to do, as an adjudicator and not as an advocate or adversary.") The plaintiff was represented by counsel. (R.287,289-290,307-311,314.) She was present and permitted to testify. (R.11,287,289-290.) All exhibits were regularly made a part of the administrative record without objection. (R.299.) Her counsel was afforded the opportunity to make opening and closing statements without interruption or limitation. (R.290,314.) She was questioned by the ALJ in a standard non-confrontational manner. (R.290-297,298-307.) The ALJ's examination of the vocational witness was similarly conducted in a standard non-confrontational manner. (R.297-298,311-313.) The ALJ's questions were all appropriate, non-adversarial, posed without objection or suggestion of error on his part, and plaintiff's counsel was given the opportunity to ask follow-up questions. (R.307-311,313-314.)

In short, the ALJ conducted an utterly conventional hearing in full conformity to the agency's standard hearing procedures, and absolutely no suggestion of prejudice appears, either explicitly or implicitly, in the hearing record.. *Navistar Int'l Trans. Corp. v. United States E.P.A.*, 941 F.2$^d$ 1339, 1360 (6th Cir. 1991) (prejudice by a decisionmaker must be evident from the record and may not be based on speculation or inference).

Considered in the light most favorable to the plaintiff, all applicable legal principles and hearing-related facts in this case compel the conclusion that the Commissioner provided her with the federally-required procedural safeguards necessary to protect her due process rights. *See Gimbel v. Commodity Futures Trading Comm.*, 872 F.2$^d$ 196, 198 (7th Cir. 1989) ("In order to set aside a decisionmaker's findings on the grounds of bias, the conduct must be so extreme that it deprives the hearing of that fairness and impartiality necessary to that fundamental fairness required by due process.") (internal quote marks omitted); *Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982) (a party asserting bias has the burden of proof); *Navistar Int'l Trans. Corp.*, 941 F.2$^d$ at 1360 (a decisionmaker is presumed to be unbiased, and this presumption can be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present).

## B.

The plaintiff's second claim that the ALJ's adverse decision was not based on substantial evidence is also without merit. Although she claims an inability to work beginning on January 1, 1998; the objective medical evidence fails to support her.

The ALJ's decision was regularly made pursuant to the agency's regulations and five-step sequential process. (R.11-18.) 20 C.F.R. §§ 404.943- 404.950 and § 404.1520. *See Richardson v. Perales*, 402 U.S. 389, 400 (1971); *Bowen v. Yuckert*, 482 U.S. 137, 145-146 (1087). By all indicators, he properly resolved all factual questions in the normal manner and without any abdication of his decision-making responsibilities. (R.11-18.) And a thorough review of the record

9

requires a finding that the decision to deny the plaintiff's application is based on substantial evidence and equally a finding that it was reached through application of the correct legal standards. *See Coffman v. Bowen,* 829 F.2$^d$ 514, 517 (4th Cir. 1987).

The only information in the record concerning the plaintiff's medical condition, before her Title II insured status expired at the end of June 2002, is office notes and records of her then primary care physician, Dr. Fong Hang. (*See* R. 187-208). Between July 1997 and the end of June 2002, his progress notes generally show that she was seen monthly, and on occasion more frequently, for a number of reoccurring health-related complaints, including migraine headaches, chronic neck and right shoulder pain and stiffness, neck and arm pain, coughs and sore throat, diarrhea, colds, bilateral hand numbness and pain, carpel tunnel syndrome, depression, neurogenic bladder complaints, and knee and ankle pain. (R.187-208.)

She was treated conservatively for these various problems, and none required her to be hospitalized. (*Id.*) As treatment for her diffuse pain complaints during this period of time, Dr. Hang principally prescribed periodic trigger point injections and Percocet (oxycodone and acetaminophen), a narcotic analgesic. For her life-related depressive and anxiety symptoms, he principally prescribed Prosac or Lexapro. (E.g., R.74.)

Although the plaintiff's neck pain is often described by Dr. Hang in his office records as "c[ervical] osteoarthritis," cervical MRIs in October 2004 and in January 2006 at the University of Virginia Medical Center ("UVaMC") demonstrated only "mild" degenerative changes at C5/6 and

10

C6/7. (R.133-138,210-212.)

During the decisionally relevant period, Dr. Hang's records show that in the Spring of 2001 the plaintiff was functionally able to do private duty nursing (R.195) and in the Fall of the same year was able to travel to Colorado for an extended period (R.191). Consistent with the conclusions of the reviewing state agency physicians, Dr. Hang's office notes and records otherwise fail to demonstrate disabling functional limitations at any time prior to the expiration of her insured status.

In addition to the receipt of continuing care for a similar range of transient and chronic health-related complaints by her primary care physicians (R.101-106,119,159-186,217-251.258-282), the plaintiff's more recent medical records also document her referral to a number of health care professionals for evaluation or treatment. (R.99-158.) None of these records, however, demonstrates a disabling condition within the relevant time period. (*Id.*)

For example, on the basis of her persistent complaints of numbness in her hands, she underwent bilateral carpel tunnel decompression in 2002. (R.187.) And in 2004 on the basis of these and other ill-defined sensory deficit complaints she underwent an inconclusive neurologic evaluation, including a brain MRI, which disclosed only some periventricular white matter changes. (R.122-125,139-142,151-158.)

Similarly, in 2004, she also received treatment for an episode of acute left thigh pain "suggest[ive]" of neuralgia. (R.99-100,117). During the same year, a thoracic MRI at UVaMC failed

11

to identify any medically significant basis for her complaints of "back pain" (R.133-138), and abdominal radiographic studies done in response to her complaints of persistent abdominal pain disclosed only a small ill-defined abdominal mass (R.120-122,126-132,139-150).

The same is true in May 2006, when she experienced an exacerbation of depressive symptoms, she required only two sessions of psychiatric treatment through Valley Behavioral Health Associates. (R.213-216,252-256).

All of the above-recited evidence was considered by the ALJ. He determined that the plaintiff was not "disabled" for Social Security purposes prior to June 30, 2002, and that decision is patently supported by substantial evidence.

### V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. Plaintiff's counsel knowingly failed to comply with the requirements of paragraph 1 of the court's Standing Order No. 2005-2;

2. This failure to comply with the requirements of Standing Order No. 2005-2 constitutes a waiver of the right and opportunity by, or on behalf of, the plaintiff to address, in writing and orally, the reasons she believes the Commissioner's final decision is not supported by substantial evidence or why it should be otherwise

reversed and remanded;

3. Considered in a light most favorable to the plaintiff, the record shows that the plaintiff was provided with a fully fair administrative hearing and that she was provided with all federally-required procedural safeguards necessary to protect her due process rights;

4. The Commissioner's final decision is supported by substantial evidence;

5. Substantial evidence in the record supports the Commissioner's finding that through June 30, 2002, the date that she was last insured, the plaintiff was not disabled within the meaning of the Social Security Act;

6. Substantial evidence in the record supports the Commissioner's finding that through her last insured date the plaintiff retained the residual function capacity to perform a range of sedentary work activity; and

7. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's prayer for relief, and DISMISSING this case from the docket of the court with prejudice to the plaintiff.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 5th day of March 2008.

/s/ JAMES G. WELSH
United States Magistrate Judge